**08 CV 01695**

Judge Pauley

88-08/GMV/SL
FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
ARDEMAR MARINE LIMITED
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax
Gina M. Venezia (GV 1551)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------

ARDEMAR MARINE LIMITED,

                    Plaintiff,

    -against-

EMCO SHIPPING,

                    Defendant.

**08 Civ _____ (____)**

**VERIFIED COMPLAINT**



RECEIVED
FEB 2 0 2008
U.S.D.C. S.D. N.Y.
CASHIER

-------------------------------------------------------------

      Plaintiff, ARDEMAR MARINE LIMITED (hereinafter "ARDEMAR") for its Verified

Complaint against Defendant EMCO SHIPPING (hereinafter "EMCO") alleges upon

information and belief as follows:

      1.     This is an admiralty and maritime claim within the meaning of Rule 9(h) of the

Federal Rules of Civil Procedure in that it involves a claim for the breach of a maritime contract

of charter party.  This case also falls under this Court's admiralty and maritime jurisdiction

pursuant to 28 U.S.C. §1333 and the Court's federal question jurisdiction pursuant to 28 U.S.C.

§1331 in that the action arises under the New York Convention on the Recognition and

Enforcement of Foreign Arbitral Awards, codified at 9 U.S.C. §201 *et seq.* and/or the Federal

Arbitration Act, 9 U.S.C. §1 *et seq.*

2.    At all times material hereto, Plaintiff ARDEMAR was and still is a foreign business entity duly organized and existing under the laws of a foreign country with an address at 24a, Archimedous Street, Engomi, Cyprus.

3.    At all times relevant hereto, Defendant EMCO was and still is a foreign business entity duly organized and existing under the laws of a foreign country with an address at Gülbahar Sok Perdemsac Plaza, No: 17/148 Kozyatagi, Istanbul.

4.    On or about January 5, 2007, Defendant EMCO, as charterer, entered into a maritime contract of charter party with Plaintiff ARDEMAR, as owner, for two time charter trips to carry cargo on board the M/V MAKEEVKA. (Annexed hereto as **Exh. A** is the charter party).

5.    Under the charter, Defendant EMCO was obligated to pay charter hire at the rate of $15,000 per day pro rata for the duration of the charter period.

6.    On January 8, 2007 at 0340 hours, Plaintiff ARDEMAR duly delivered the M/V MAKEEVKA into the service of Defendant EMCO and began performance of its obligations under the charter.

7.    ARDEMAR duly performed its obligations under the charter.

8.    On February 8, 2007 at 2020 hours, the M/V MAKEEVKA was re-redelivered to Plaintiff ARDEMAR.

9.    After the charter period, Plaintiff ARDEMAR issued a final hire invoice to Defendant EMCO for a hire balance of $41,111.55 earned and due in favor of ARDEMAR under the charter. (Annexed hereto as **Exh. B** is the final hire invoice).

10.    In breach of the charter, and despite due demand, Defendant EMCO has failed and/or otherwise refused to pay hire amounts due and outstanding in the amount of $41,111.55, the entire amount of which remains unpaid and owing.

11.     The charter party provides for the application of English law and disputes between the parties to be resolved by arbitration in London, and ARDEMAR specifically reserves its right to arbitrate the substantive matters at issue.

12.     This action is brought *inter alia* pursuant to 9 U.S.C. §8 in order to obtain security for Plaintiff ARDEMAR's claim made or to be made in the London arbitration in accordance with LMAA Small Claims Procedure and under English law, as agreed by the parties.

13.     As a regular feature of English law and arbitration, attorneys fees are awarded to the successful litigant, along with costs, disbursements, the cost of the arbitration, and interest, all of which constitutes a part of the Plaintiff's main claim and the amount sued for herein.

14.     The LMAA Small Claims Procedures require the payment of a fee of £1,750.00 and allow a party to recover other costs, including attorney fees, up to £2,500. ARDEMAR may also be required to pay a fee of £125.00, for the President of the LMAA to appoint the sole arbitrator.  Therefore, Plaintiff ARDEMAR estimates, as nearly as can presently be computed, that the legal expenses and costs of prosecuting its claims in London arbitration will be £4,375.00 (USD $8,596.80).

15.     Interest anticipated to be awarded is estimated to be $6,120.76 (calculated at the rate of 7% per annum compounded quarterly for a period of 2 years, the estimated time for completion of the proceedings in London).

16.     In all, the claim for which Plaintiff ARDEMAR sues in this action, as near as presently may be estimated, totals $55,829.11, no part of which has been paid by Defendant EMCO, despite due demand.  Plaintiff ARDEMAR specifically reserves its right to amend this figure and to seek an increase in the amount of security should such sum appear to be insufficient to fully secure ARDEMAR.

3

**Request for Rule B Relief**

17.     Upon information and belief, and after investigation, Defendant cannot be "found" within this District for the purpose of Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims, but Plaintiff believes that Defendant has, or will shortly have, assets within this District comprising, *inter alia*, cash, funds, escrow funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or for the benefit of Defendant EMCO SHIPPING (collectively hereinafter, "ASSETS"), including but not limited to ASSETS in its name and/or being transferred for its benefit at, moving through, or being transferred and/or wired to or from banking institutions or such other garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein.

18.     The total amount sought to be attached pursuant to the above is **$55,829.11**.

WHEREFORE, Plaintiff ARDEMAR MARINE LIMITED prays:

a.      That process in due form of law according to the practice of this Court may issue against Defendant citing it to appear and answer the foregoing;

b.      That if Defendant cannot be found within this District pursuant to Supplemental Rule B that all tangible or intangible property of Defendant up to and including **$55,829.11** be restrained and attached, including, but not limited to any cash, funds, escrow funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or being transferred from or for the benefit of Defendant EMCO SHIPPING, including but not limited to ASSETS in its name and/or being transferred for its benefit at, through, or within the possession,

custody or control of such banking institutions and/or any such other garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein;

c.      That this Court retain jurisdiction over the matter for any further or supplemental proceedings as may be necessary, including but not limited to the recognition and enforcement of any award entered against the Defendant in the London proceedings; and

d.      For such other, further and different relief as this Court may deem just and proper in the premises.

Dated: New York, New York
       February 19, 2008

FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
ARDEMAR MARINE LIMITED

By: _____
       Gina M. Venezia (GV1551)
       80 Pine Street
       New York, NY  10005
       (212) 425-1900
       (212) 425-1901 (fax)

# Exhibit A

(1)

**Joanna Bruce**

**From:** CFD / Kuchinskiy [Kuchinskiy@cfdshipping.com]
**Sent:** 29 January 2007 10:23
**To:** CFD / Commerce Dept.
**Subject:** Fw: makeevka/emco - recap

PLS FIND THE RE-CAP OF THE FIXTURE

MV MAKEEVKA

1) NAME, EX NAMES    :    MAKEEVKA EX WORLD SHANGHAI
2) TYPE    :    BULK CARRIER
3) CLASS    :    RMR KM* BULK
4) OFFICIAL REGISTER NO.:    20
5) REGISTER NO.    :    812583
   imo no    :    8101927
6) YARD AND YEAR BUILT :    GANGAN SHIPBUILDING YARD, CHINA,
                             10 JUNE 1982
7) FLAG, HOMEPORT    :    UKRAINE, MARIUPOL
8) GRT/NRT INTERNATIONAL:    17989 / 10667
        PANAMA CANAL :    19116 / 15438 (ISSUED 17.10.94)
        SUEZ CANAL :    18153.61 / 14913.89 (ISSUED 17.02.86)
9) CALL SIGN, TELEX NO. :    U V A E, INMARSAT C 427284810 UVAE X
10) LOA, LBP, BEAM    :    196.47 / 183.00 / 23.00 M
11) DEPTH MOULDED    :    14.30 M
12) PCT    :    38.61
13) SPEED AND CONSUMPTION
    ABT KNOTS ON ABT MTS IFO 180 CST    PLUS    ABT MTS MDO
LADEN  12,5    21        2.2
BALLAST 13    21        2.2
14) BUNKER CONSUMPTION IN PORT PER 24 HOURS:
    WORKING    2.5 MT MDO    + 1 MTS  IFO PD
    IDLE    1.8 MT MDO    + 1 MTS  IFO PD ·
15) BUNKER FUEL CAPACITIES    :    IFO - 1354.1 MTS
                 MDO - 238.6 MTS
16) WATER BALLAST TANK CAPACITY:
    WATER BALLAST HOLD(S) CAPACITY:
17) BALLASTING CAPACITY    :    550 M CUB / HOUR (FACT 500)
    DEBALLASTING CAPACITY    :    550 M CUB / HOUR
18) DWAT IN METRIC TONS:
    TROPICAL : 28958 / 10.45
    SUMMER  : 28160 / 10.24
    WINTER  : 27317 / 10.02
    FRESHWATER ALLOWANCE ON SUMMER MARKS: 232 MM
19) NUMBER AND SIZES OF HATCHES
              L / B
    NO.1  17.5 X 11.0
    NO.2  21.58 X 11.0
    NO.3  13.28 X 11.0
    NO.4  21.58 X 11.0
    NO.5  17.43 X 11.0

04/12/2007

DIMENSIONS OF CEMENT HOLES: D-680MM,
SITUATED: ONE FORE PART OF HOLD STARBOARD SIDE AND ONE AFT PART OF
HOLD PORT
SIDE. TOTAL 2 HOLES ON EACH HOLD

NUMBER AND SIZES OF HOLDS
　　　　　L
NO.1  27.85 X  8.00
　　　　　22.00
NO.2  31.54 X 22.00
NO.3  21.58 X 23.00
NO.4  31.54 X 23.00
N0.5  28.22 X 22.40
　　　　　7.20
- CLEAR UNOBSTRMINIMUM TANKTOP DIMENSIONS L X B FWD/AFT

| NR | L | B FWD | AFT |
|---|---|---|---|
| 1 | 30,0 M | 3,0 M | 16,76 M |
| 2 | 31,4 | 16,76 | 16,76 |
| 3 | 20,4 | 16,76 | 16,76 |
| 4 | 31,4 | 16,76 | 16,76 |
| 5 | 28,0 | 16,4 | 7,6 |

HOLD LENGHTH /WIDTH ABOVE HOPPERS
| 1 | 30,0 | 10,6 | 22,6 |
|---|---|---|---|
| 2 | 31,4 | 22,6 | 22,6 |
| 3 | 20,4 | 22,6 | 22,6 |
| 4 | 31,4 | 22,6 | 22,6 |
| 5 | 28,0 | 22,4 | 20,4 |

20) TYPE OF HATCH COVERS:    MCGREGOR TYPE

21) BELOW STATED CUBIC CAPACITIES ARE ALL CLEAR AND AVAILABLE FOR
CARGO,
INCLUDING HATCHCOAMING SPACE:

| | CBM. GRAIN / BALE |
|---|---|
| NO.1 | 6761 / 6518 |
| NO.2 | 8205 / 7951 |
| NO.3 | 5595 / 5421 |
| NO.4 | 8204 / 7949 |
| NO.5 | 6700 / 6472 |
| TTL | 35465 / 34311 |

WING TANKS

HOLD NO.2   2 X 594
NO.3   2 X 406
NO.4   2 X 594
NO.5   2 X 481

22) CONSTANTS MAX INCLUDE FW: 460MT + 27.3 = 487.3MTS (510MTS TO BE LESS)
RESHWATER CAPACITY  : TANK NO 1 PS -  44 MTS
TANK NO 2 PS - 104 MTS
AFT PEAK    - 277 MTS
TANK NO 2 SS -  95 MTS ( DRINKABLE )

04/12/2007

TANK NO 1 SS - 44 MTS ( BOILER )

--- -------

TOTAL      564 MTS

EVAPORATOR CAPACITY - 10 MTS/PD (APPROX)
FRESHWATER CONSUMPTION: 11 + 1 BOILER WATER
23) INSURED VALUE HULL AND MACHINERY:
  INTEREST VALUE          :
  YEARLY INSURANCE PREMIUM   :
  NAME OF HULL AND MACHINERY UNDERWRIGHTERS: ASKA, REINSURERS
INGOSSTRAKH

24) MAXIMUM UNIFORM LOAD ON TANKTOP:
        ON DECK AREA NR.1/2/4/5 : 17MT/M2
        ON DECK 3.HOLDS : 23.1 MT/M2
        ON HATCHCOVERS: 2.2 MT/M2
        ON MAIN DECK : 2.75 MT/M2
25) CARGO GEAR (NUMBER, CAPACITY, MAX. OUTSWING, STATE WHERE SITUATED,
        HOISTING SPEED, LOWERING SPEED):

GEAR 4 X 25 TNS CRANES
LIFTING CAPACITY 25 T - IF OUTLET 22M HOISTING SPEED 12 M/MIN
              IF OUTLET 20 M SPEED 72 M/MIN WITHOUT CARGO
              WITHOUT CARGO

26) DISTANCE FROM WATERLINE TO TOP OF HATCHCOAMING FORE AT FORWARD
HATCH
  AND AFT AT AFT HATCH BASIS 30% FILLING OF BUNKER CAPACITIES, WHEN:
    FULLY BALLASTED (WB TANKS ONLY):
    FORE HATCH: 10.84 (FORE OF HA NO 1)
    AFT HATCH:  9.22 (AFT OF HA NO 5)

27) MAX AIRDRAFT: 43.3

29) NUMBER AND SIZE OF HOLDS (CLEAR LENGTH X BREADTH X HEIGHT):

30) MAIN ENGINE.
    MAKE AND TYPE:MITSUI ENG.& SH.BUILD.
    B&W 8L55GCA (D) DIESSEL ENGINE
    MAX CONTINUOUS OUTPUT   : 10700 BHP / 150 RPM

    MAIN ENGINE DESIGNED CONSUMPTION:

31) OWNERS WARRANT THAT ON THE DATE OF DELIVERY UNDER THIS C/P THE
    VESSEL IS AND SHALL CONTINUE TO BE THROUGHOUT THE CURRENCY OF
    THIS C/P (YES/NO)
    A) FITTED WITH AUSTRALIAN HOLD LADDERS ACCORDING TO AUSTRALIAN
      RULES AND REGULATIONS - YES
    B) STEELFLOORED THROUGHOUT IN ALL HOLDS STRENGTHENED AND SUITABLE
      FOR GRAB DISCHARGE - YES
    C) FULLY LOGS/TIMBER FITTED WITH ALL LOOSE LASHING MATERIAL AND
      CHAINS - NO - AND STANCHIONS - NO
    D) SELFTRIMMING IN ALL HOLDS - YES
    E) STRENGHTENED FOR THE CARRIAGE OF HEAVY CARGOES AND SUITABLE FOR
      ALTERNATE HOLDS LOADING - YES

04/12/2007

F) FITTED FOR CARRIAGE OF GRAIN IN ACCORDANCE WITH SOLAS 1974 AND
   LATER AMENDMENTS WITHOUT REQUIRING BAGGING, STRAPPING OR
SECURING
   WHEN LOADING A FULL (DEADWEIGHT) CARGO OF HEAVY GRAIN IN BULK
   (STOWAGE FACTOR 42 CBFT/MT) WITH ENDS UNTRIMMED - YES
G) EQUIPPED WITH SUFFICIENT HATCH TENTS TO COVER ALL HATCHES - NO
H) ELECTRICALLY VENTILATED IN ALL HOLDS - NO
I) FITTED WITH SHAFT GENERATOR - NO
J) $CO_2$ FITTED IN ALL CARGO COMPARTMENTS - YES
K) CARGO BATTENS FITTED PERMANENTLY - NO
L) CONTAINER FITTED - NO
   NUMBER OF CONTAINERS TO BE SERVED -  IN HOLDS
                ON DECK
N) FULLY FITTED FOR PANAMA CANAL - YES - AND SUEZ CANAL - YES -
   AND ST.LAWRENCE SEAWAY - YES - AND GREAT LAKES SYSTEM - YES

   DWAT ON 26'03 FRESHWATER DRAFT:  19,700 MT (19000 MTS)

ALL DTLS ABT


= ows will send all vessels certificates

For,
= all subs to be lifted latest jan 5th,2007/13:00 istanbul hrs = a/c emco
denizcilik - istanbul = dely aps nemrut bay atdnshinc = redely dlosp 1 sp
red sea (int yemen - aden port) = 1 tct with steel = january 6/8, 2007 =
hire usd 15,000.- diot = chrtrs will pay usd 18,000.- nett to ows together
with 1st hire payment which to be considered closing of mv dobrush/emco
   file and ballast bonus
= ows confirm tt mv dobrush/emco file has been closed upon rcpt of 1st hire
= dur abt 35/40 days wog
= o'wise mv dobrush/emco c/p details
= ttl 3.75 pct here
==end re-cap==

Pls check and confirm

Note;
======
Alex, tks fr yr support let's cross the fingures to get the subs on time

Brgds/hanbulk-as broker only


_____ Èíôîgìàöèÿ NOD32 1957 (20070104) _____

ìòî ñññáùáíèâ ïğîââğåíî Àíòèâèğóñíîé ñèñòåìîé NOD32.
http://www.eset.com



04/12/2007

# HANBULK



Code Name: **"NYPE 93"**
Recommended by:
The Baltic and International Maritime Council (BIMCO)
The Federation of National Associations of
Ship Brokers and Agents (FONASBA)

**ORIGINAL**

## TIME CHARTER®
### New York Produce Exchange Form
*Issued by the Association of Ship Brokers and Agents (U.S.A.), Inc.*

November 6th, 1913 - Amended October 20th, 1921; August 6th. 1931; October 3rd, 1946;
Revised June 12th. 1981; September 14th 1993.

| | |
|---|---|
| **THIS CHARTER PARTY,** made and concluded in......***Istanbul,***............................................... | 1 |
| this......................**25th**...day of...**July**........................**19..2005**........................................... | 2 |
| | |
| Between...***Messrs. Commercial Fleet of Donbass, Mariupol, Ukraine as Head Owners***............ | 3 |
| .***Messrs. Ardemar Marine Limited as Disponent/Bareboat Owners***........................................... | 4 |
| ***Owners*** of the Vessel described below, and...***Messrs. Emco Shipping Istanbul, Turkiye***............ | 5 |
| ...................................................................................................................................... | 6 |
| ...................................................................................................................................... | 7 |
| ...................................................................................................................................... | 8 |
| ***Charterers.*** | 9 |

## Description of Vessel

| | |
|---|---|
| Name .***"DOBRUSH"***...................... Flag ...**(See Clause 52)**.......... Built ....**1982**........(year). | 10 |
| | 11 |
| ~~Port and number of Registry~~ ........................................................................................ | 12 |
| ~~Classed~~.......................................................................**in**........................................ | 13 |
| ~~Deadweight~~.................................~~long*/metric* tons (cargo and bunkers, including freshwater and~~ | 14 |
| ~~stores not exceeding~~ ..................................... ~~long's/metric* tons) on a salt water draft of~~................... | 15 |
| ~~on summer freeboard.~~ | 16 |
| ~~Capacity~~............................................ ~~cubic feet grain~~...............................~~cubic feet bale space.~~ | 17 |
| ~~Tonnage~~........................................ ~~GT/GRT.~~ | 18 |
| ~~Speed about~~...............~~knots, fully laden, in good weather conditions up to and including maximum~~ | 19 |
| ~~Force~~ ...............................~~on the Beaufort wind scale, on a consumption of about~~.... ~~long's/metric*~~ | 20 |
| ~~tons of~~........................................... | 21 |
| | 22 |

* *Delete as appropriate.*
*For further description see Appendix "A" (if applicable)*



# HANBULK

..................................................................................................................... 61
..................................................................................................................... 62
..................................................................................................................... 63
..................................................................................................................... 64
~~(b) If IMO-classified cargo is agreed to be carried, the amount of such cargo shall be limited to~~ 65
~~....................................... tons and the Charterers shall provide the Master with any evidence he may~~ 66
~~reasonably require to show that the cargo is packaged, labelled, loaded and stowed in accordance with IMO~~ 67
~~regulations, failing which the Master is entitled to refuse such cargo or, if already loaded, to unload it at~~ 68
~~the Charterers' risk and expense.~~ 69

70
**5.     Trading Limits     (See Clause 74)** 
~~The Vessel shall be employed in such lawful trades between safe ports and safe places~~ 71
~~within...................................................................................................................................~~ 72
~~..................................................................................................................................excluding~~ 73
..................................................................................................................... 74
..................................................................................................................... 75
..................................................................................................................... 76
~~...............as the Charterers shall direct.~~

77
**6.     Owners to Provide** 78
The Owners shall provide and pay for the insurance of the Vessel, except as otherwise provided, and for 78
all provisions, cabin, deck, engine-room and other necessary stores, including boiler water; shall pay for 79
wages, consular shipping and discharging fees of the crew and charges for port services pertaining to the 80
crew; shall maintain the Vessel's class and keep her in a thoroughly efficient state in hull, machinery and 81
equipment for and during the service, and have a full complement of officers and crew. 82

83
**7.     Charterers to Provide** 
The Charterers, while the Vessel is on hire, shall provide and pay for all the bunkers except as otherwise 84
agreed; shall pay for port charges (including compulsory watchmen and cargo watchmen and compulsory 85
garbage disposal), ~~all communication expenses pertaining to the Charterers' business at cost~~, pilotages, 86
towages, agencies, commissions, consular charges (except those pertaining to individual crew members 87
or flag of the Vessel), and all other usual expenses except those stated in Clause 6, but when the Vessel 88
puts into a port for causes for which the Vessel is responsible (other than by stress of weather), then all 89
such charges incurred shall be paid by the Owners. Fumigations ordered because of illness of the crew 90
shall be for the Owners' account. Fumigations ordered because of cargoes carried or ports visited while 91
the Vessel is employed under this Charter Party shall be for the Charterers' account, 92
***including crew hotel accommodation, if necessary.*** All other fumigations 92
shall be for the Charterers'account after the Vessel has been on charter for a continuous period of six 93
months or more. 94

The Charterers shall provide and pay for necessary dunnage and also any extra fittings requisite for a 95
special trade or unusual cargo, but the Owners shall allow them the use of any dunnage already aboard 96
the Vessel. Prior to redelivery the Charterers shall remove ~~their dunnage and~~ fittings at their cost and in 97
their time. 98

99
**8.     Performance of Voyages** 
(a) The Master shall perform the voyages with due despatch, and shall render all customary assistance 100
with the Vessel's crew. The Master shall be conversant with the English language and (although 101

EMCO
DENIZCILIK TIC. ve SAN. LTD. ŞTI.
Gülbahar Sok. Perdemsaç Plaza
No:17/44 Kozyatağı - ISTANBUL
Tel:(0216) 372 90 06 Fax:(0216) 372 90 25

appointed by the Owners) shall be under the orders and directions of the Charterers as regards | 102
employment and agency; and the Charterers shall perform all cargo handling, including but not limited to | 103
loading, stowing, trimming, lashing, securing, dunnaging, unlashing, discharging, and tallying, at their risk | 104
and expense, under the supervision of the Master. | 105

(b) If the Charterers shall have reasonable cause to be dissatisfied with the conduct of the Master or | 106
officers, the Owners shall, on receiving particulars of the complaint, investigate the same, and, if | 107
necessary, make a change in the appointments. | 108

| | 109

**9.    Bunkers    (See Clause 72)**
(a) The Charterers on delivery, and the Owners on redelivery, shall take over and pay for all fuel and | 110
diesel oil remaining on board the Vessel as hereunder. The Vessel shall be delivered with: | 111
.............................................. long*/metric* tons of fuel oil at the price of.................................. per ton; | 112
..........................................tons of diesel oil at the price of .................................. per ton. The vessel shall | 113
be redelivered with:................................ tons of fuel oil at the price of......................................... per ton; | 114
.............................................. tons of diesel oil at the price of ........................................... per ton. | 115

| | 116

* *Same tons apply throughout this clause*

(b) The Charterers shall supply bunkers of a quality suitable for burning in the Vessel's engines and | 117
auxiliaries and which conform to the specification(s) as set out in Appendix A. | 118

The Owners reserve their right to make a claim against the Charterers for any damage to the main engines | 119
or the auxiliaries caused by the use of unsuitable fuels or fuels not complying with the agreed | 120
specification(s). Additionally, if bunker fuels supplied do not conform with the mutually agreed | 121
specifications) or otherwise prove unsuitable for burning in the Vessel's engines or auxiliaries, the Owners | 122
shall not be held responsible for any reduction in the Vessel's speed performance and/or increased bunker | 123
consumption, nor for any time lost and any other consequences. | 124

| | 125

**10.    Rate of Hire/Redelivery Areas and Notices**
The Charterers shall pay for the use and hire of the said Vessel at the rate of $.....**(See Clause 84)**.......... | 126
~~U.S. currency, daily, or $........................................ U.S. currency per ton on the Vessel's total deadweight~~ | 127
~~carrying capacity, including bunkers and stores, on ............................. summer freeboard, per 30 days,~~ | 128
~~commencing on and from the day of her delivery, as aforesaid, and at and after the same rate for any part~~ | 129
~~of a month; hire shall continue until the hour of the day of her redelivery in like good order and condition,~~ | 130
~~ordinary wear and tear excepted, to the Owners (unless Vessel lost) at...................................................~~ | 131
| | 132
~~.(See Clause 75).~~................................................................................................................... | 133
...................................................................................................................... | 134
..................................................................................unless otherwise mutually agreed.

The Charterers shall give the Owners not less than **10,5,2,1**................ days notice of the Vessel's | 135
expected date and probable port of redelivery. ***Owners need at least 15 days prior expiration*** | 136
***minimum period for Charterers declaration of option for 2nd period.***
For the purpose of hire calculations, the times of delivery, redelivery or termination of charter shall be | 137
adjusted to GMT. | 138

EMCO
DENİZCİLİK TİC. ve SAN. LTD. ŞTİ.
Gülbahar Sok. Perdemsaç Plaza
No:17/48 Kozyatağı - İSTANBUL
Tel:(0216) 362 01 06 Fax:(0216) 372 90 25

HANBULK

**11.** **Hire Payment**    139

(a)    *Payment*    140
Payment of Hire shall be made so as to be received by the Owners or their designated payee in    141
.(See Clause 81).................................................. viz...........................................................    142
..........................................................................................................................................    143
..........................................................................................................................................    144
..........................................................................................................................................in    145
.................................................currency, or in United States Currency, in funds available to the    146
Owners on the due date, 15 days in advance, and for the last month or part of same the approximate    147
amount of hire, and should same not cover the actual time, hire shall be paid for the balance day by day    148
as it becomes due, if so required by the Owners. Failing the punctual and regular payment of the hire,    149
or on any fundamental breach whatsoever of this Charter Party, the Owners shall be at liberty to    150
withdraw the Vessel from the service of the Charterers without prejudice to any claims they (the Owners)    151
may otherwise have on the Charterers.    152

At any time after the expiry of the grace period provided in Sub-clause 11 (b) hereunder and while the    153
hire is outstanding, the Owners shall, without prejudice to the liberty to withdraw, be entitled to withhold    154
the performance of any and all of their obligations hereunder and shall have no responsibility whatsoever    155
for any consequences thereof, in respect of which the Charterers hereby indemnify the Owners, and hire    156
shall continue to accrue and any extra expenses resulting from such withholding shall be for the    157
Charterers' account.    158

(b)    *Grace Period*    159
Where there is failure to make punctual and regular payment of hire due to oversight, negligence, errors    160
or omissions on the part of the Charterers or their bankers, the Charterers shall be given by the Owners    161
........3..... clear banking days (as recognized at the agreed place of payment) written notice to rectify the    162
failure, and when so rectified within those ......3...... days following the Owners' notice, the payment shall    163
stand as regular and punctual.    164

Failure by the Charterers to pay the hire within .......3......... days of their receiving the Owners' notice as    165
provided herein, shall entitle the Owners to withdraw as set forth in Sub-clause 11 (a) above.    166

(c)    *Last Hire Payment*    167
Should the Vessel be on her voyage towards port of redelivery at the time the last and/or the penultimate    168
payment of hire is/are due, said payment(s) is/are to be made for such length of time as the Owners and    169
the Charterers may agree upon as being the estimated time necessary to complete the voyage, and taking    170
into account bunkers actually on board, to be taken over by the Owners and estimated disbursements for    171
the Owners' account before redelivery. Should same not cover the actual time, hire is to be paid for the    172
balance, day by day, as it becomes due. When the Vessel has been redelivered, any difference is to be    173
refunded by the Owners or paid by the Charterers, as the case may be.    174

(d)    *Cash Advances*    175
Cash for the Vessel's ordinary disbursements at any port may be advanced by the Charterers, as required    176
by the Owners, subject to *2.5* percent commission and such advances shall be deducted from the hire.    177
The Charterers, however, shall in no way be responsible for the application of such advances.    178

EMCO
DENIZCILIK TIC. ve SAN. LTD. ŞTI.
Gülbahar Sok. Perdemsac Plaza
No:17/4 Kozyatağı - ISTANBUL
Tel:(0216) 362 81 06 Fax:(0216) 372 90 25

HANBULK

**12.**     **Berths**      179
The Vessel shall be loaded and discharged in any safe dock or at any safe berth or safe place that    180
Charterers or their agents may direct, provided the Vessel can safely enter, lie and depart always afloat    181
at any time of tide.      182

**13.**     **Spaces Available**      183
(a) The whole reach of the Vessel's holds, decks, and other cargo spaces (not more than she can    184
reasonably and safely stow and carry), also accommodations for supercargo, if carried, shall be at the    185
Charterers' disposal, reserving only proper and sufficient space for the Vessel's officers, crew, tackle,    186
apparel, furniture, provisions, stores and fuel.      187

~~(b) In the event of deck cargo being carried, the Owners are to be and are hereby indemnified by the~~    188
~~Charterers for any loss and/or damage and/or liability of whatsoever nature caused to the Vessel as a~~    189
~~result of the carriage of deck cargo and which would not have arisen had deck cargo not been loaded.~~    190

**14.**     **Supercargo and Meals**      191
The Charterers are entitled to appoint a *one* supercargo, who shall accompany the Vessel at the Charterers'    192
risk and see that voyages are performed with due dispatch, *and provided technical assistance.*    193
He is to be furnished with free      193
accommodation and same fare as provided for the Master's table, the Charterers paying at the rate of    194
.**(See Clause 80)**...per day. The Owners shall victual pilots and customs officers, and also, when    195
authorized by the Charterers or their agents, shall victual tally clerks, stevedore's foreman, etc..    196
Charterers paying at the rate of **(See Clause 80)**................ per meal for all such victualling.    197
*Victualing of supercargo (including free accomodation) and victualing of pilots, customs' officers etc are*
*different points and in Charter Party above items indicated separately.*

**15.**     **Sailing Orders and Logs**      198
The Charterers shall furnish the Master from time to time with all requisite instructions and sailing    199
directions, in writing, in the English language, and the Master shall keep full and correct deck and engine    200
logs of the voyage or voyages, which are to be patent to the Charterers or their agents, and furnish the    201
Charterers, their agents or supercargo, when required, with a true copy of such deck and engine logs,    202
showing the course of the Vessel, distance run and the consumption of bunkers. Any log extracts    203
required by the Charterers shall be in the English language.      204

**16.**     **Delivery/Canceling**      205
If required by the Charterers, time shall not commence before ...*8th of August 2005*.......and should the    206
Vessel not be ready for delivery on or before....*11th of August 2005*......but not later than.*24:00* hours,    207
the Charterers shall have the option of cancelling this Charter Party.      208

    *Extension of Cancelling*      209
If the Owners warrant that, despite the exercise of due diligence by them, the Vessel will not be ready    210
for delivery by the cancelling date, and provided the Owners are able to state with reasonable certainty    211
the date on which the Vessel will be ready, they may, at the earliest seven days before the Vessel is    212
expected to sail for the port or place of delivery, require the Charterers to declare whether or not they will    213
cancel the Charter Party. Should the Charterers elect not to cancel, or should they fail to reply within two    214
days or by the cancelling date, whichever shall first occur, then the seventh day after the expected date    215

EMCO
DENIZCILIK TIC. ve SAN. LTD. ŞTI.
Gülbahar Sok. Perdemsaç Plaza
No:17/142 Kazyatağı - İSTANBUL
Tel:(0216) 362 41 06 Fax:(0216) 372 90 25

# HANBULK

of readiness for delivery as notified by the Owners shall replace the original cancelling date. Should the   216
Vessel be further delayed, the Owners shall be entitled to require further declarations of the Charterers   217
in accordance with this Clause.   218

**17.**   **Off Hire**   219
In the event of loss of time from deficiency and/or default and/or strike of officers or crew, or deficiency   220
of stores, fire, breakdown of, or damages to hull, machinery or equipment, grounding, detention by the   221
arrest of the Vessel, (unless such arrest is caused by events for which the Charterers, their servants,   222
agents or subcontractors are responsible), or detention by average accidents to the Vessel or cargo unless   223
resulting from inherent vice, quality or defect of the cargo, drydocking for the purpose of examination or   224
painting bottom, or by any other similar cause preventing the full working of the Vessel, the payment of   225
hire and overtime, if any, shall cease for the time thereby lost, *provided always that such*   226
***above-mentioned incidents occurred due to fault of the Owners and/or their master and/or their***   226
***crew. In all other cases, the lost of time due to above-mentioned reasons to be for the Charterer's***   226
***account and the vessel shall remain "on hire".*** Should the Vessel deviate or put back   226
during a voyage, contrary to the orders or directions of the Charterers, for any reason other than accident   227
to the cargo or where permitted in lines 257 to 258 hereunder, the hire is to be suspended from the time   228
of her deviating or putting back until she is again in the same or equidistant position from the destination   229
and the voyage resumed therefrom. All bunkers used by the Vessel while off hire shall be for the Owners'   230
account. In the event of the Vessel being driven into port or to anchorage through stress of weather,   231
trading to shallow harbors or to rivers or ports with bars, any detention of the Vessel and/or expenses   232
resulting from such detention shall be for the Charterers' account. If upon the voyage the speed be   233
reduced by defect in, or breakdown of, any part of her hull, machinery or equipment, *which it occurred*   234
*due to Owners' fault,* the time so lost, and   234
the cost of any extra bunkers consumed in consequence thereof, and all extra proven expenses may be   235
deducted from the hire.   236

**18.**   **Sublet**   **(See also Clause 101)**   237
~~Unless otherwise agreed, the Charterers shall have the liberty to sublet the Vessel for all or any part of~~   238
~~the time covered by this Charter Party, but the Charterers remain responsible for the fulfillment of this~~   239
~~Charter Party.~~   240

**19.**   **Drydocking**   241
~~The Vessel was last drydocked~~ .........................................................................................................   242

~~*(a) The Owners shall have the option to place the Vessel in drydock during the currency of this Charter~~   243
~~at a convenient time and place, to be mutually agreed upon between the Owners and the Charterers, for~~   244
~~bottom cleaning and painting and/or repair as required by class or dictated by circumstances.~~   245

~~*(b) Except in case of emergency no drydocking shall take place during the currency of this Charter~~   246
~~Party.~~   247

* *Delete as appropriate*   248

**20.**   **Total Loss**   249
Should the Vessel be lost, money paid in advance and not earned (reckoning from the date of loss or   250
being last heard of) shall be returned to the Charterers at once.   251

EMCO
DENIZCILIK TIC ve SAN. LTD. ŞTI.
Gülbahar Sok. Perdemsec Plaza
No:17/44 Kozyatağı - ISTANBUL
Tel:(0216) 362 41 06 Fax:(0216) 372 90 25

# HANBULK

**21.   Exceptions**                                                                                                      252
The act of God, enemies, fire, restraint of princes, rulers and people, and all dangers and accidents of the   253
seas, rivers, machinery, boilers, and navigation, and errors of navigation throughout this Charter, always   254
mutually excepted.                                                                                                      255

**22.   Liberties**                                                                                                      256
The Vessel shall have the liberty to sail with or without pilots, to tow and to be towed, to assist vessels   257
in distress, and to deviate for the purpose of saving life and property.                                     258

**23.   Liens**                                                                                                          259
The Owners shall have a lien upon all cargoes and all sub-freights and/or sub-hire for any amounts due   260
under this Charter Party, including general average contributions, and the Charterers shall have a lien on   261
the Vessel for all monies paid in advance and not earned, and any overpaid hire or excess deposit to be   262
returned at once.                                                                                            263

The Charterers will not directly or indirectly suffer, nor permit to be continued, any lien or encumbrance,   264
which might have priority over the title and interest of the Owners in the Vessel. The Charterers   265
undertake that during the period of this Charter Party, they will not procure any supplies or necessaries   266
or services, including any port expenses and bunkers, on the credit of the Owners or in the Owners' time.   267

**24.   Salvage**                                                                                                        268
All derelicts and salvage shall be for the Owners' and the Charterers' equal benefit after deducting   269
Owners' and Charterers' expenses and crew's proportion.                                                      270

**25.   General Average**                                                                                                271
General average shall be adjusted according to York-Antwerp Rules 1974, as amended 1990, or any   272
subsequent modification thereof, in .....**LONDON**...... and settled in **UNITED STATES**.........................   273
currency. **English Law to apply.**                                                                          274

The Charterers shall procure that all bills of lading issued during the currency of the Charter Party will   275
contain a provision to the effect that general average shall be adjusted according to York-Antwerp Rules   276
1974, as amended 1990, or any subsequent modification thereof and will include the "New Jason   277
Clause" as per Clause 31.                                                                                     278

Time charter hire shall not contribute to general average.                                                   279

**26.   Navigation**                                                                                                     280
Nothing herein stated is to be construed as a demise of the Vessel to the Time Charterers. The Owners   281
shall remain responsible for the navigation of the Vessel, acts of pilots and tug boats, insurance, crew,   282
and all other matters, same as when trading for their own account.                                           283

**27.   Cargo Claims**                                                                                                   284
Cargo claims as between the Owners and the Charterers shall be settled in accordance with the Inter-Club   285
New York Produce Exchange Agreement of February 1970, as amended May, 1984, or any subsequent   286
modification or replacement thereof.                                                                         287

# HANBULK

ORIGINAL

**28.    Cargo Gear and Lights**    288
The Owners shall maintain the cargo handling gear of the Vessel which is as follows:................................    289
.(See Clause 52)................................................................................................................    290
..........................................................................................................................................    291
..........................................................................................................................................    292
providing gear (for alt derricks or cranes) capable of lifting capacity as described. The Owners shall also    293
provide on the Vessel for night work lights as on board, but all additional lights over those on board shall    294
be at the Charterers' expense. The Charterers shall have the use of any gear on board the Vessel. If    295
required by the Charterers, the Vessel shall work night and day and all cargo handling gear shall be at the    296
Charterers' disposal during loading and discharging. In the event of disabled cargo handling gear, or    297
insufficient power to operate the same, the Vessel is to be considered to be off hire to the extent that    298
time is actually lost to the Charterers ~~and the Owners to pay stevedore stand-by charges occasioned~~    299
~~thereby,~~ unless such disablement or insufficiency of power is caused by the Charterers' stevedores. If    300
required by the Charterers, the Owners shall bear the cost of hiring shore gear in lieu thereof, in which    301
case the Vessel shall remain on hire.    302

**29.    Crew Overtime**    303
~~In lieu of any overtime payments to officers and crew for work ordered by the Charterers or their agents,~~    304
~~the Charterers shall pay the Owners, concurrently with the hire................................................per month~~    305
~~or pro-rata.~~    306

**30.    Bills of Lading    (See Clause 76)**    307
~~(a) The Master shall sign the bills of lading or waybills for cargo as presented in conformity with mates~~    308
~~or tally clerk's receipts. However, the Charterers may sign bills of lading or waybills on behalf of the~~    309
~~Master, with the Owner's prior written authority, always in conformity with mates or tally clerk's receipts.~~    310

~~(b) All bills of lading or waybills shall be without prejudice to this Charter Party and the Charterers shall~~    311
~~indemnify the Owners against all consequences or liabilities which may arise from any inconsistency~~    312
~~between this Charter Party and any bills of lading or waybills signed by the Charterers or by the Master~~    313
~~at their request.~~    314

~~(c) Bills of lading covering deck cargo shall be claused: "Shipped on deck at Charterers', Shippers' and~~    315
~~Receivers' risk, expense and responsibility, without liability on the part of the Vessel, or her Owners for~~    316
~~any loss, damage, expense or delay howsoever caused."~~    317

**31.    Protective Clauses**    318
This Charter Party is subject to the following clauses all of which are also to be included in all bills of    319
lading or waybills issued hereunder:    320

(a)    CLAUSE PARAMOUNT    321
"This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the    322
United States, the Hague Rules, or the Hague-Visby Rules, as applicable, or such other similar national    323
legislation as may mandatorily apply by virtue of origin or destination of the bills of lading, which shall    324
be deemed to be incorporated herein and nothing herein contained shall be deemed a surrender by the    325
carrier of any of its rights or immunities or an increase of any of its responsibilities or liabilities under said    326
applicable Act. If any term of this bill of lading be repugnant to said applicable Act to any extent, such    327
term shall be void to that extent, but no further."    328

EMCO
DENIZCILIK Tic. ve SAN. LTD. ŞTI.
Gülbahar Sok. Perdemsac Plaza
No:17/14 Mecidiyeköy - ISTANBUL
Tel:(0216) 372 61 06 Fax:(0216) 372 90 25

# HANBULK

ORIGINAL

and                                                                                          329

(b)        BOTH-TO-BLAME COLLISION CLAUSE                                                    330
"If the ship comes into collision with another ship as a result of the negligence of the other ship and any   331
act, neglect or default of the master, mariner, pilot or the servants of the carrier in the navigation or in   332
the management of the ship, the owners of the goods carried hereunder will indemnify the carrier against   333
all loss or liability to the other or non-carrying ship or her owners insofar as such loss or liability represents   334
loss of, or damage to, or any claim whatsoever of the owners of said goods, paid or payable by the other   335
or non-carrying ship or her owners to the owners of said goods and set off, recouped or recovered by the   336
other or non-carrying ship or her owners as part of their claim against the carrying ship or carrier.   337

The foregoing provisions shall also apply where the owners, operators or those in charge of any ships or   338
objects other than, or in addition to, the colliding ships or objects are at fault in respect to a collision or   339
contact."                                                                                   340

and                                                                                          341

(c)        NEW JASON CLAUSE                                                                  342
"In the event of accident, danger, damage or disaster before or after the commencement of the voyage   343
resulting from any cause whatsoever, whether due to negligence or not, for which, or for the   344
consequences of which, the carrier is not responsible, by statute, contract, or otherwise, the goods.   345
shippers, consignees, or owners of the goods shall contribute with the carrier in general average to the   346
payment of any sacrifices, losses, or expenses of a general average nature that may be made or incurred,   347
and shall pay salvage and special charges incurred in respect of the goods.   348

If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully as if salving ship   349
or ships belonged to strangers. Such deposit as the carrier or his agents may deem sufficient to cover   350
the estimated contribution of the goods and any salvage and special charges thereon shall, if required,   351
be made by the goods, shippers, consignees or owners of the goods to the carrier before delivery."   352

and                                                                                          353

(d)        ~~U.S. TRADE - DRUG CLAUSE~~                                                      354
~~"In pursuance of the provisions of the U.S. Anti Drug Abuse Act 1986 or any re-enactment thereof, the~~   355
~~Charterers warrant to exercise the highest degree of care and diligence in preventing unmanifested~~   356
~~narcotic drugs and marijuana to be loaded or concealed on board the Vessel.~~   357

~~Non-compliance with the provisions of this clause shall amount to breach of warranty for consequences~~   358
~~of which the Charterers shall be liable and shall hold the Owners, the Master and the crew of the Vessel~~   359
~~harmless and shall keep them indemnified against all claims whatsoever which may arise and be made~~   360
~~against them individually or jointly. Furthermore, all time lost and all expenses incurred, including fines,~~   361
~~as a result of the Charterers' breach of the provisions of this clause shall be for the Charterer's account~~   362
~~and the Vessel shall remain on hire.~~   363

~~Should the Vessel be arrested as a result of the Charterers' non-compliance with the provisions of this~~   364
~~clause, the Charterers shall at their expense take all reasonable steps to secure that within a reasonable~~   365

EMCO
DENİZCİLİK TİC. ve SAN. LTD. ŞTİ.
Gülbahar Mah. Perdemsaç Plaza
No:17/196 Mecidiyeköy - İSTANBUL
Tel:(0212) 356 67 06 Fax:(0212) 372 90 25

# HANBULK

ORIGINAL

~~time the Vessel is released and at their expense put up the bails to secure release of the Vessel.~~    366

~~The Owners shall remain responsible for all time lost and all expenses incurred, including fines, in the~~    367
~~event that unmanifested narcotic drugs and marijuana are found in the possession or effects of the~~    368
~~Vessel's personnel."~~    369

~~and~~    370

(e)    WAR CLAUSES    *Conwartime to apply.* **(See Rider Clause)**    371
~~"(i) No contraband of war shall be shipped. The Vessel shall not be required, without the consent of the~~    372
~~Owners, which shall not be unreasonably withheld, to enter any port or zone which is involved in a state~~    373
~~of war, warlike operations, or hostilities, civil strife, insurrection or piracy whether there be a declaration~~    374
~~of war or not, where the Vessel, cargo or crew might reasonably be expected to be subject to capture,~~    375
~~seizure or arrest, or to a hostile act by a belligerent power (the term "power" meaning any de jure or de~~    376
~~facto authority or any purported governmental organization maintaining naval, military or air forces).~~    377

~~(ii) If such consent is given by the Owners, the Charterers will pay the provable additional cost of insuring~~    378
~~the Vessel against hull war risks in an amount equal to the value under her ordinary hull policy but not~~    379
~~exceeding a valuation of................................................ In addition, the Owners may purchase and the~~    380
~~Charterers will pay for war risk insurance on ancillary risks such as loss of hire, freight disbursements,~~    381
~~total loss, blocking and trapping, etc. If such insurance is not obtainable commercially or through a~~    382
~~government program, the Vessel shall not be required to enter or remain at any such port or zone.~~    383

~~(iii) In the event of the existence of the conditions described in (i) subsequent to the date of this Charter,~~    384
~~or while the Vessel is on-hire under this Charter, the Charterers shall, in respect of voyages to any such~~    385
~~port or zone assume the provable additional cost of wages and insurance properly incurred in connection~~    386
~~with master, officers and crew as a consequence of such war, warlike operations or hostilities.~~    387

~~(iv) Any war bonus to officers and crew due to the Vessel's trading or cargo carried shall be for the~~    388
~~Charterers' account."~~    389

## 32.    War Cancellation    390
In the event of the outbreak of war (whether there be a declaration of war or not) between any two or    391
more of the following countries:...*USA, Great Britain, Germany, France, Russia, China*.....................    392
.................................................................................................................    393
........................................................................................    .    ........................    394
.................................................................................................................    395

either the Owners or the Charterers may cancel this Charter Party. Whereupon, the Charterers shall    396
redeliver the Vessel to the Owners in accordance with Clause 10; if she has cargo on board, after    397
discharge thereof at destination, or, if debarred under this Clause from reaching or entering it, at a near    398
open and safe port as directed by the Owners; or, if she has no cargo on board, at the port at which she    399
then is; or, if at sea, at a near open and safe port as directed by the Owners. In all cases hire shall    400
continue to be paid in accordance with Clause 11 and except as aforesaid all other provisions of this    401
Charter Party shall apply until redelivery.    402

## 33.    Ice    403
The Vessel shall not be required to enter or remain in any icebound port or area, nor any port or area    404

EMCO
DENIZCILIK TIC. ve SAN. LTD. ŞTI.
Gülbahar Sok. Perdemsaç Plaza
No:17/16 K.nyalağı - İSTANBUL
Tel:(0216) 262 91 06 Fax:(0216) 372 90 25

# HANBULK

where lights or lightships have been or are about to be withdrawn by reason of ice. nor where there is | 405
risk that in the ordinary course of things the Vessel will not be able on account of ice to safely enter and | 406
remain in the port or area or to get out after having completed loading or discharging. Subject to the | 407
Owners' prior approval the Vessel is to follow ice-breakers when reasonably required with regard to her | 408
size, construction and ice class. | 409

410

**34.     Requisition** 411

~~Should the Vessel be requisitioned by the government of the Vessel's flag during the period of this Charter~~ 411
~~Party, the Vessel shall be deemed to be off hire during the period of such requisition, and any hire paid~~ 412
~~by the said government in respect of such requisition period shall be retained by the Owners. The period~~ 413
~~during which the Vessel is on requisition to the said government shall count as part of the period provided~~ 414
~~for in this Charter Party.~~ 415

~~If the period of requisition exceeds ..................................... months, either party shall have the option~~ 416
~~of cancelling this Charter Party and no consequential claim may be made by either party.~~ 417

418
**35.     Stevedore Damage** 419
Notwithstanding anything contained herein to the contrary, the Charterers shall pay for any and all | 419
damage to the Vessel caused by stevedores provided the Master has notified the Charterers and/or their | 420
agents in writing as soon as practical but not later than 48 hours after any damage is discovered. Such | 421
notice to specify the damage in detail and to invite Charterers to appoint a surveyor to assess the extent | 422
of such damage. | 423

(a) In case of any and all damage(s) affecting the Vessel's seaworthiness and/or the safety of the crew | 424
and/or affecting the trading capabilities of the Vessel, the Charterers shall immediately arrange for repairs | 425
of such damage(s) at their expense and the Vessel is to remain on hire until such repairs are completed | 426
and if required passed by the Vessel's classification society. | 427

(b) Any and all damage(s) not described under point (a) above shall be repaired at the Charterers' option, | 428
before or after redelivery concurrently with the Owners' work. In such case no hire and/or expenses will | 429
be paid to the Owners except and insofar as the time and/or the expenses required for the repairs for | 430
which the Charterers are responsible, exceed the time and/or expenses necessary to carry out the | 431
Owners' work. | 432

433
**36.     Cleaning of Holds** 434
The Charterers shall provide and pay extra for sweeping and/or washing and/or cleaning of holds between | 434
voyages and/or between cargoes provided such work can be undertaken by the crew and is permitted by | 435
local regulations, at the rate of...*USD 400.-* per hold. | 436

In connection with any such operation, the Owners shall not be responsible if the Vessel's holds are not | 437
accepted or passed by the port or any other authority. The Charterers shall have the option to re-deliver | 438
the Vessel with unclean/unswept holds against a lumpsum payment of...*USD 2000.-* in lieu of cleaning, *including dunnage removal* | 439
*If Charterers confirm 2nd leg than ILOCH to be calculated basis USD 2,500 including dunnage removal.*

440
**37.     Taxes** 441
Charterers to pay all local. State, National taxes and/or dues assessed on the Vessel or the Owners | 441
resulting from the Charterers' orders herein, whether assessed during or after the currency of this Charter | 442

EMCO
DENIZCILIK TIC. ve SAN. LTD. ŞTI.
Gülbahar Sok. Pardemsac Plaza
No.17/145 Kozyatağı - ISTANBUL
Tel:(0216) 372 90 06 Fax (0216) 372 90 25

# HANBULK

ORIGINAL

Party including any taxes and/or dues on cargo and/or freights and/or sub-freights and/or hire (excluding 443
taxes levied by the country of the flag of the Vessel or the Owners). 444

**38.    Charterers' Colors** 445
The Charterers shall have the privilege of flying their own house flag and painting the Vessel with their 446
own markings. The Vessel shall be repainted in the Owners' colors before termination of the Charter 447
Party. Cost and time of painting, maintaining and repainting those changes effected by the Charterers 448
shall be for the Charterers' account. 449

**39.    Laid Up Returns** 450
The Charterers shall have the benefit of any return insurance premium receivable by the Owners from their 451
underwriters as and when received from underwriters by reason of the Vessel being in port for a minimum 452
period of 30 days if on full hire for this period or pro rata for the time actually on hire. 453

**40.    Documentation** 454
The Owners shall provide any documentation relating to the Vessel that may be required to permit the 455
Vessel to trade within the agreed trade limits, including, but not limited to certificates of financial 456
responsibility for oil pollution, provided such oil pollution certificates are obtainable from the Owners' 457
P & I club, valid international tonnage certificate, Suez and Panama tonnage certificates, valid certificate 458
of registry and certificates relating to the strength and/or serviceability of the Vessel's gear. 459
*Oil pollution covered by vessel's P&I Club.* 459

**41.    Stowaways** 460
(a)    (i) The Charterers warrant to exercise due care and diligence in preventing stowaways in gaining 461
access to the Vessel by means of secreting away in the goods and/or containers shipped by the 462
Charterers. 463

(ii) If, despite the exercise of due care and diligence by the Charterers, stowaways have gained 464
access to the Vessel by means of secreting away in the goods and/or containers shipped by the 465
Charterers, this shall amount to breach of charter for the consequences of which the Charterers 466
shall be liable and shall hold the Owners harmless and shall keep them indemnified against all 467
claims whatsoever which may arise and be made against them. Furthermore, all time lost and all 468
expenses whatsoever and howsoever incurred, including fines, shall be for the Charterers' account 469
and the Vessel shall remain on hire. 470
(iii) Should the Vessel be arrested as a result of the Charterers' breach of charter according to 471
sub-clause (a)(ii) above, the Charterers shall take all reasonable steps to secure that, within a 472
reasonable time, the Vessel is released and at their expense put up bail to secure release of the 473
Vessel. 474

b)    (i) If, despite the exercise of due care and diligence by the Owners, stowaways have gained 475
access to the Vessel by means other than secreting away in the goods and/or containers shipped 476
by the Charterers, all time lost and all expenses whatsoever and howsoever incurred, including 477
fines, shall be for the Owners' account and the Vessel shall be off hire. 478

(ii) Should the Vessel be arrested as a result of stowaways having gained access to the Vessel 479
by means other than secreting away in the goods and/or containers shipped by the Charterers, 480
the Owners shall take all reasonable steps to secure that, within a reasonable time, the Vessel 481

EMCO
DENIZCILIK ... ve SAN. LTD. ŞTI.
Gülbahar Sok. Perdemsac Plaza
No ... Mecidiyeköy - ISTANBUL
Tel:(0216) ... ne Fax (0216) 372 90 25

# HANBULK

ORIGINAL

is released and at their expense put up bail to secure release of the Vessel.     482

**42.**     **Smuggling**     483
In the event of smuggling by the Master, Officers and/or crew, the Owners shall bear the cost of any    484
fines, taxes, or imposts levied and the Vessel shall be off hire for any time lost as a result thereof.    485

**43.**     **Commissions**     486
A commission of.......**1.25** percent is payable by the Vessel and the Owners to *Hanbulk Chartering*......    487
........................................................................................................................................................    488
........................................................................................................................................................    489
........................................................................................................................................................    490
on hire earned and paid under this Charter, and also upon any continuation or extension of this Charter.    491

**44.**     **Address Commission**     492
An address commission of ......**2.5** percent is payable to.*Charterers*.......................................................    493
........................................................................................................................................................    494
........................................................................................................................................................    495
..........................................................on hire earned and paid under this Charter.    496

**45.**     **Arbitration**     497
(a)     NEW YORK     498
~~All disputes arising out of this contract shall be arbitrated at New York in the following manner, and~~    499
~~subject to U.S. Law:~~     500

~~One Arbitrator is to be appointed by each of the parties hereto and a third by the two so chosen. Their~~    501
~~decision or that of any two of them shall be final, and for the purpose of enforcing any award, this~~    502
~~agreement may be made a rule of the court. The Arbitrators shall be commercial men, conversant with~~    503
~~shipping matters. Such Arbitration is to be conducted in accordance with the rules of the Society of~~    504
~~Maritime Arbitrators Inc.~~     505

~~For disputes where the total amount claimed by either party does not exceed US $ ...........................**~~    506
~~the arbitration shall be conducted in accordance with the Shortened Arbitration Procedure of the Society~~    507
~~of Maritime Arbitrators Inc.~~     508

(b)     LONDON     509
All disputes arising out of this contract shall be arbitrated at London and, unless the parties agree    510
forthwith on a single Arbitrator, be referred to the final arbitrament of two Arbitrators carrying on business    511
in London who shall be members of the Baltic Mercantile & Shipping Exchange and engaged in Shipping,    512
one to be appointed by each of the parties, with power to such Arbitrators to appoint an Umpire. No    513
award shall be questioned or invalidated on the ground that any of the Arbitrators is not qualified as    514
above, unless objection to his action be taken before the award is made. Any dispute arising hereunder    515
shall be governed by English Law.     515

For disputes where the total amount claimed by either party does not exceed US $..**50,000**...................**    517
the arbitration shall be conducted in accordance with the Small Claims Procedure of the London Maritime    518
Arbitrators Association. *Arbitration should be under LMAA terms.*    519

*[signature]*

EMCO
DENIZCILIK Tic. ve SAN. LTD. ŞTİ.
Gölbahçe Sok. Perdemsac Plaza
No:17/48 Bostancıtağı - İSTANBUL
Tel:(0216) 463 61 06 Fax:(0216) 372 90 25

# HANBULK



ORIGINAL

M/V "DOBRUSH"
## CHARTER PARTY DATED, ISTANBUL 25TH OF JULY 2005

**Clause 46 - Breaking IWL**
Charterers do not have the right to break Institute Warranties Limit.

**Clause 47 - War Risk Insurance**
Basic War Risk Insurance premium for worldwide trading shall be for Owners' account and additional premiums including blocking and trapping shall be invoiced to Owners based on quotation from Owners P & I Club for Hull + Machinery and Officers/crew due to the vessel's trading to restricted area shall be for Charterers' account. Owners undertake always to do their utmost to obtain cheapest additional premium (if any at all) from their Underwriters.
Conwartime 1993 terms to apply.

**Clause 48 - Change of Political Situation**
Deleted.

**Clause 49-Black List**
Owners guarantee that vessel is not Black Listed by any Arab League Countries. Owners guarantee vessel is not Black Listed by trading countries due to vessel's flag/ownership/operators/age and whatsoever.

**Clause 50 - Panama/Suez Canal transit**
Owners guarantee that the vessel shall be fully fitted for Panama/Suez Canal Transit and in possession of valid necessary certificates during the currency of this Charter Party to comply with current regulations and requirements of both Canals.

**Clause 51-ITF**
Vessel is not ITF fitted: vessel's crew is under vessel's flag rules employment - vessel flying national flag.

**Clause 52 - Vessel's description (all figures about)**
MV DOBRUSH

1) NAME, EX NAMES:  MV DOBRUSH  EX MV WORLD GOODWILL
2) TYPE: BULK CARRIER
3) CLASS: KM * BULK CARRIER (ESP)
4) OFFICIAL REGISTER NO.: 21
5) RUSSIAN REGISTER NO.: 812575
   IMO NUMBER : B101939
6) YARD AND YEAR BUILT : 25.09.1982 / JIANGNAN SHIPYARD, CHINA
7) FLAG, HOMEPORT : UKRAINE, MARIUPOL
8) GRT/NRT  INTERNATIONAL:  17989   / 10667
        PANAMA CANAL :  19117,17 / 15676,2
        SUEZ CANAL  :  18153,61 / 14913,89
9) CALL SIGN, TELEX NO.: URCM /427293810 URCM X
10) LOA, LBP, BEAM: 196.47 / 183.00 / 23.00 M
11) DEPTH MOULDED : 14.30 M
12) TPC : 38.61 PSM

13) SPEED AND CONSUMPTION
     ABT KNOTS ON ABT MTS IFO 180 CST    PLUS   ABT MTS MDO
LADEN   12,5      21              2.2
BALLAST 13       21              2.2
14) BUNKER CONSUMPTION IN PORT PER 24 HOURS:

EMCO
DENİZCİLİK TİC. ve SAN. LTD. ŞTİ.
Perdemsac Plaza
- İSTANBUL
Tel:(0216)       Fax:(0216) 372 90 26

# HANBULK



ORIGINAL 2

## M/V "DOBRUSH"
### CHARTER PARTY DATED, ISTANBUL 25TH OF JULY 2005

CARGO OPERATION  MDO 2.5 MTS PD
W/OUT        1.7
BOILER       IFO 2.0
15) BUNKER FUEL CAPACITIES:  IFO 1115 MTS + 60 MTS
                 MDO  238 MTS + 20 MTS
                 OIL  115 MTS
16) WATER BALLAST TANK CAPACITY:  10877 CBM - 11148.9 MTS
17) BALLASTING CAPACITY: 550 MTS + 120 MTS
18) DWAT IN METRIC TONS / DRAFT :
    TROPICAL: 28982 / 10.448 M
    SUMMER:  28160 / 10.235 M
    WINTER:  27341 / 10.022 M
    FRESHWATER ALLOWANCE ON SUMMER MARKS: 232 MM
19) NUMBER AND SIZES OF HATCHES :
              L / B
    NO.1  17.50 X 11.0
    NO.2  21.58 X 11.0
    NO.3  13.28 X 11.0
    NO.4  21.58 X 11.0
    NO.5  17.43 X 11.0
20) TYPE OF HATCH COVERS: MC GREGOR, HYDRAULIC
21) BELOW STATED CUBIC CAPACITIES ARE ALL CLEAR AND AVAILABLE FOR
CARGO,   INCLUDING HATCHCOAMING SPACE:
    (PCT)  CBM. GRAIN / BALE        CBFT  GRAIN / BALE
NO.1 (19.1)   6761 / 6518
NO.2 (23.1)   8205 / 7950    TWING 2 X 594
NO.3 (15.8)   5594 / 5421          2 X 406
NO 4 (23.1)   8204 / 7949          2 X 594
NO.5 (18.9)   6700 / 6472          2 X 481
-------------------------------------------------
TTL  (100)   35464 / 34310        4150
22) CONSTANTS MAX    : 600 MTS
   FRESHWATER CAPACITY  : 288 MTS
   FRESHWATER CONSUMPTION: 7-9 MTS PD
23) MAXIMUM UNIFORM LOAD ON TANKTOP:
       UPPER DECK      - 2.75 T/SQM
       HATCHES         - 2.20 T/SQM
      DOUBLE DECK HLDS NOS.1,2,4,5 - 17.00 T/SQM
        HLD NO. 3     - 22.10 T/SQM
24) CARGO GEAR :
   NUMBER       - 4 CARGO HYDRAULIC CRANES
   CAPACITY     - 25 T
            CRANES NOS.1-3    CRANES NOS.2-4
   MAX.OUTSWING    - 20  M AT 25 DGRS    22 M AT 25 DGS
   MIN         - 4.5 M AT 78.5 DGS   4.5 M AT 78.39 DGS
   STATE WHERE SITUATED - NO.1 BETWEEN HLDS 1-2
              NO.2 - " -    2-3
              NO.3 - " -    3-4
              NO.4 _ " -    4-5
HOISTING SPEED, LOWERING SPEED:
     LOAD      -   HOISTING SPEED
     25 MT     -      0-12 M/MIN
     12.5      -      0-24

EMCO
DENIZCILIK TİC. ve SAN. LTD. ŞTI.
Gülbahar Sok. Perdemsac Plaza
No:17/142 Kozyatağı - ISTANBUL
Tel:(0216) 372 90 08  Fax:(0216) 372 90 25

# HANBULK

ORIGINAL

3

## M/V "DOBRUSH"
### CHARTER PARTY DATED, ISTANBUL 25TH OF JULY 2005

```
    6.0      -     0-36
    EMPTY    -     0-72
```

25) DISTANCE FROM WATERLINE TO TOP OF HATCHCOAMING FORE AT FORWARD
HATCH    AND AFT AT AFT HATCH BASIS 30% FILLING OF BUNKER
CAPACITIES, WHEN:     FULLY BALLASTED (WB TANKS ONLY):
-DISTANCE FROM FIRST COAMING HO 1 TO LAST COAMING HO 5-131.6M. -DISTANCE FRON LAST
COAMING HO 5 TO STERN - 41.7 M. -DISTANCE FROM BOW TO FIRST COAMING HO 1 - 23.2 M.
WATERLINE TO TOP OF HATCH VSL ARRIVAL MURMANSK: HATCH 1 - 11.30 M. HATCH 2 - 11.01 M.
HATCH 3 - 10.75 M. HATCH 4 - 10.49 M. HATCH 5 - 10.20 M.
HIGHT OF HATCHCOAMING : HOLD NO.1    - 2.10 M
                  HOLDS NOS.2-5   - 2.00 M
26)  DRAFT :  LADEN        BALLAST
     FORE: 10.23       4.9
     AFT: 10.23        7,6
     MID: 10.23        6.35
  MAX AIRDRAFT: 43,48 M
27) NUMBER AND SIZE OF HOLDS (CLEAR LENGTH X BREADTH X HEIGHT):
            L  /  H
     NO.1   30.10 X 13.4
     NO.2   31.54 X 12.6
     NO.3   21.58 X 12.6
     NO.4   31.54 X 12.6
     NO.5   28.22 X 12.6
28) MAIN ENGINE.
   MAKE AND TYPE  : MITSUI ENG.& SH.BUILD.
              B&W 8L55GCA (D) DIESSEL ENGINE
   MAX CONTINUOUS OUTPUT   : 10700 BHP / 150 RPM
   CONT.SERVICE OUTPUT    : 9760 BHP / 145 RPM
   PROPELLERS : D 5140/PITCH 3392 MM / TYPE 4 BLADES 4 BLADES
SOLID    MATTER   : MN-AL-BRONZE.
31) OWNERS WARRANT THAT ON THE DATE OF DELIVERY UNDER THIS C/P THE VESSEL IS AND
   SHALL CONTINUE TO BE THROUGHOUT THE CURRENCY OF THIS C/P  -YES
   A) FITTED WITH AUSTRALIAN HOLD LADDERS ACCORDING TO AUSTRALIAN RULES AND
      REGULATIONS  - YES
   B) STEELFLOORED THROUGHOUT IN ALL HOLDS STRENGTHENED AND SUITABLE  FOR GRAB
      DISCHARGE - YES
   C) FULLY LOGS/TIMBER FITTED WITH ALL LOOSE LASHING MATERIAL AND CHAINS - YES/NO -
      AND STANCHIONS - NO
   D) SELFTRIMMING IN ALL HOLDS  - YES
   E) STRENGHTENED FOR THE CARRIAGE OF HEAVY CARGOES AND SUITABLE FOR ALTERNATE
      HOLDS LOADING  - YES
      HOLDS NOS.2-4 CAN BE EMPTY
   F) FITTED FOR CARRIAGE OF GRAIN IN ACCORDANCE WITH SOLAS 1974 AND LATER
      AMENDMENTS WITHOUT REQUIRING BAGGING, STRAPPING OR SECURING WHEN LOADING A
      FULL (DEADWEIGHT) CARGO OF HEAVY GRAIN IN BULK (STOWAGE FACTOR 42 CBFT/MT)
      WITH ENDS UNTRIMMED- YES
   G) EQUIPPED WITH SUFFICIENT HATCH TENTS TO COVER ALL HATCHES - NO
   H) ELECTRICALLY VENTILATED IN ALL HOLDS - NO
   I) FITTED WITH SHAFT GENERATOR - NO
   J) CO2 FITTED IN ALL CARGO COMPARTMENTS - YES
   K) CARGO BATTENS FITTED PERMANENTLY - NO
   L) CONTAINER FITTED - NO



EMRO
DENIZCILIK TIC. ve SAN. LTD. ŞTI.
Gülbahar Sok. Pardemsac Plaza
No:17/406 Mecydiyeköy - ISTANBUL
Tel:(0216) 372 91 06 Fax:(0216) 372 90 25

# HANBULK

## ORIGINAL

4

### M/V "DOBRUSH"
### CHARTER PARTY DATED, ISTANBUL 25TH OF JULY 2005

ALL DTLS ABT

#### Clause 53 - Deratting Certificate
The vessel shall be delivered with valid deratting certificate or deratting exemption certificate.
If such certificate does not cover the whole period of this charter, costs or renewal of certificate and fumigation, if necessary, shall be for Owners' account. Any detention and extra expenses incurred thereby shall be also for Owners' account.

#### Clause 54 - Quarantined/Radio Pratigue
Normal quarantine time and expenses for the vessel's entering shall be for Charterers' account, but any time of detention and expenses for quarantine due to pestilence, illness etc., of Master, Officers and crew shall be for Owners' account.

Further, the vessel shall be in possession of valid certificates necessary to prepare radio pratique at port or ports where radio pratique is available.

#### Clause 55 - Health Certificate
The vessel shall be in possession of necessary certificates to comply with safety and health regulations and all current requirements at all port(s) of call during this charter.

#### Clause 56 - Grain Loading Certificate
Deleted.

#### Clause 57 - Cargo Gear and Equipment
The vessel's cargo gear and all other equipment shall comply with the regulations and/or requirements in effect at port(s) of call and canals and countries in which the vessel will be employed. The Owners also guarantee that the vessel shall be at all times in possession of valid and up to date certificates on board to comply with such regulations and/or requirements.

If stevedores, longshoremen or other labourers are not permitted to work by reason of any failure of the Master, the Owners and/or their agents to comply with such regulations or by reason that the vessel is not in possession of such valid and up-to-date certificates, the Owners shall make immediate corrective measures.

The Charterers may suspend hire for time lost thereby and any extra expenses including stevedores' standby time shall be for Owners' account.

#### Clause 58 - WWF Requirement
Deleted.

#### Clause 59-P & I Club
Owners guarantee that the vessel is Class covered by P & I Club: British Marine Luxembourg A.S. Owners P&I Club surveyors to attend at both loading and discharging ports and fees/expenses to be for Owners account.

#### Clause 60 - Owners' Agents
Charterer's Agents at ports of call should take care of normal ships' services. Should the vessel require any unusual assistance above and beyond normal husbandry matters, then the Owners are either to appoint their own supervisory agent to attend these matters or negotiate a reasonable fee with Charterers' agent for their services. If agents as per tariff are entitled to an agency fee for handling Owners' matters, same always to be for Owners' account.

EMCO
DENIZCILIK TIC. ve SAN. LTD. ŞTI.
Gülbahçe Sok Perdemsaç Plaza
No:17/28 Kuzyalaşı - ISTANBUL
Tel:(0216) 361 81 06 Fax:(0216) 372 90 25

# HANBULK



ORIGINAL

5

### M/V "DOBRUSH"
### CHARTER PARTY DATED, ISTANBUL 25TH OF JULY 2005

**Clause 61 - On/Off Hire Survey**
A joint on/off hire survey is to be carried out with Owners and Charterers each contributing 50 percent to the relevant invoices.

**Clause 62 - Oil Pollution**
The Owners are required to establish or maintain financial security or responsibility in respect of oil or other pollution damage to enable the vessel lawfully to enter, remain in, or leave any port, place, territorial or contiguous waters of any country or state in performance of this Charter Party. The Owners shall make all arrangements by bond or otherwise may be necessitate to satisfy such requirements at Owners' sole expense.
The Owners shall indemnify the Charterers harmless against all consequences (including fines, if any, imposed on the Charterers) of oil or other pollution damage and any failure or inability of the Owners to do so as provided above.

**Clause 63 - Deviation**
Should the vessel put back whilst on voyage by reason of breakdown of machinery, collision, stranding, fire or other accident or damage to the vessel, or dry-docking or periodical survey, or deviate from the course of the voyage, caused by sickness of or an accident to the Master, Officers, crew or any person on board the vessel other than persons travelling by the Charterers' request, or by reason of sending stowaway(s) or refugee(s), salvage or by reason of refusal of the Master, Officers or crew to do their duties, or any Owners' matters,
the payment of hire shall be suspended from the time of inefficiency in port or area until the vessel is again efficient in the same position or regains a point of progress equivalent to that the hire ceased hereunder. Bunker consumed while the vessel is off-hire and all extra expenses incurred during such period shall be for the Owners' account.

**Clause 64 - Capture, Seizure, Arrest**
Should the vessel be captured or seized or detained, or arrested by any authority or by any legal process during the currency of this Charter Party, the payment of hire shall be suspended until the time of her release, unless such capture or seizure to detention or arrest is occasioned by any personal act or omission or default of the Charterers or their agents.
Any extra expenses directly related to the vessel incurred by and/or during the above capture or seizure or detention or arrest shall be for the Owners' account.

**Clause 65 - Preparation for loading/discharging**
The vessel's officers and crew shall perform shaping up of the vessel's hatches, cranes and gangway prior to and upon arrival at a port in order to commence loading and/or discharging operations as soon as possible.

Opening and closing of all hatch covers and erecting and dismantling of shifting boards shall be performed by the Officers and crew in addition to the usual operations performed by them, with free costs to the Charterers and unless prohibited by port regulations.
The Owners and the Master to undertake best efforts to co-operate with the Charterers for the best stowage of cargo.

**Clause 66-P.+C.**
All negotiations and fixture to be kept strictly private and confidential.

**Clause 67 - BIMCO ISM Clause**
From the date of coming into force of the International Safety Management (ISM) Code in relation to the vessel and thereafter during the currency of the Charter Party, the Owners shall procure

EMCO
DENIZCILIK TIC. ve SAN. LTD. ŞTI.
Gülbahar Ş... Perdemsac Plaza
No: 17/14... Kozyatağı - ISTANBUL
Tel: (0216) ... Fax: (0216) 372 90 25

# HANBULK



'6

**M/V "DOBRUSH"**
**CHARTER PARTY DATED, ISTANBUL 25TH OF JULY 2005**

that both the vessel and "the Company" (as defined by ISM Code) shall comply with the requirements of ISM Code.
Upon request the Owners shall provide a copy of the relevant Documents Of Compliance (DOC) and Safety Management Certificate (SMC) to the Charterers. Except as otherwise provided in the Charter Party, loss, damage, expenses or delays by failure on the part of the Owners or "the Company" to comply with the ISM Code shall be for Owners' account.

**Clause 68 - Bulk Carrier Safety Clause**
Deleted/ Not applicable.

**Clause 69 - NCB Clause**
Charterers accept Owners trading limits were USA is excluded. In any cases vessel called to US ports without any problems, if nesessary - please advise any special requirement for vessels to check.

**Clause 70 - Hull and Machinery**
Hull + Machinery insured with: ASKO, reinsured with: INGOSSTRAKH  and the insured value is USD 3.500.000.- (Three Million Five Hundred Thousand US Currency)

**Clause 71 - War Risks**
BIMCO Conwartime 1993. (See clause 99).

**Clause 72 - Bunkers on delivery**
As per clause 9.

Bunkers on delivery about 566 metric tons IFO and about 56 metric tons MGO.
Prices for IFO 180 USD 270 per metric ton / for MGO DMA USD 540 per metric ton respectively bunker prices/quantities same both ends on delivery/redelivery.

Bunker quantity will be ascertained by a bunker survey Charterers to appoint an independent surveyor and Master to join this survey on behalf of Owners. Bunkers/delivery  survey cost will be USD 2,000 (two thousand) which to be shared between Carterers and Owners.

**Clause 73 - Cargo Exclusions**
Logs, chemical waste, asphalt, pitch in bulk, expellers, bitumen in bulk, borax in bulk, calcium carbide, hides, charcoal, resin in bulk, copra,  explosives, livestock of any description, acids, dangerous and/or injurios and/or inflable cargoes, arms, ammunition, nuclear and/or radioactive materials and/or its waste, direct reduced iron or pellets, hot briqueted iron, naphta, ferrosilicon, motor spirit, turpentine, calcium hydrozideaned any other harmfull, dangerous, injurious, contraband or unlawfull cargoes, sponge iron, sulphure, copra, flourspare, salt in bulk, petroleum coke, charcoal in gunny  bags, tar in bulk, saltpetre, calcium hypohloride, jute in bulk, lime, asbestos in bulk, ammonium nitrate, arms, ammunitions, explosives, sunflowerseed expellers, hides, fire brickets, petroleum products and all its derivatives, concentrates, manioc, scrap including mbt and oily scrap, containers with dangerous cargoes, dangerous and inflammable cargoes including radioactive, turnings, shavings and heavy/oily parts, creosoted goods, cement in bulk. Charterers be allowed to carry dangerous cargoes in accordance with IMO dangerous goods code provided Owners and master's approval is given and loading/discharging is always in accordance with IMO and local regulations and to master's satisfaction. Any extra premium for dangerous cargo to be born by Charterers and Owners to be put in funds upon presentation of underwriters vouchers to Charterers.
 - Soda-ash in big bags and ferro-silicon in big bags are allowed

EMZO
DENIZCILIK TIC ve SAN. LTD. ŞTI.
Gülbahar Mah. Perdemsac Plaza
No: 17/14 Kagıtağı - ISTANBUL
Tel:(0216) 372 6 ... Fax:(0216) 372 90 25

# HANBULK



### M/V "DOBRUSH"
### CHARTER PARTY DATED, ISTANBUL 25TH OF JULY 2005

- Generally IMO cargoes are acceptable as per IMO regulations and in accordance with ship's docs

## Clause 74 - Trading Limits and exclusions
World wide trading always within I.W.L via safe port(s), safe berth(s)
Excluding: Albania, Angola, Cabinda, Namibia, Liberia, Nigeria, Sierra Leone, Israel, Iraq,
Turkish Part of Cyprus, Usa, Canada, Yugoslavia, Syria, Sweden, Finland, Norway direct trading
between China and Taiwan, Australia, New Zeeland, North Korea and war zones-as to war
excluded to be as per London hull and P&I war risks underwriters current exclusion list being in
force. The Charterers have no right to operate the vessel within war risks zones without having
Owners confirmation/permission in writing and paying additional premium in accordance with the
rate and terms set out by London underwriters. Basic war risk insurance premium, crew bonus if
any for trading into Persian Gulf or war zones, if so declared by Lloyd underwriters in London, to
be for Charterers' account. The rate of premium not to exceed those quoted by Lloyd of London or
Norwegian underwriters, blocking and trapping at Charterers risk and expenses if Arabian/Persian
Gulf has been declared as war or war-like zone by Lloyd of London.

## Clause 75 - Redelivery
Redelivery:
Dropping last outward sea pilot 1 good safe port full Med/BlackSea including Port Said North
Bound in Charterers option.

## Clause 76 - Bill of Lading
Charterers Bill(s) of Lading form to be used, in Bill(s) of Lading Charterers identify themselves as
carrier and Master or agents to sign Bill(s) of Lading on the carrier behalf according to the
Charterers/carriers written instruction but always in full accordance with mate's receipt.
Charterers tp indemnify Owners against any claims or damages arisinf from Bills of Lading not in
conformity with Mate's Receipt.
At discharging port cargo to be released against original of respective Bills of Lading. In case
originals not arrived in time to discharging port Owners are to agree to discharge cargo against
letter of indemnity as  per Owners' P and I Club wording issued/signed by Charterers on their
letterhead.

Conbill Bill(s) of Lading to be used and if marked 'lout' prior vessels arrival at dischport(s) agents
to directly confirm the Owners that all disbursments and lout expenses have been covered by
Charterers/Receivers.

## Clause 77 - Fumigation
Fumigation for cargo, if any, take place at port only, all transportation / accomodation / lodging
fee to be for Charterers account. By no means is fumigation to take place while crew is on board,
and costs for crew ashore, including transportation, hotel, victualling, meals, etc. to be for
charterer's time and expense.

## Clause 78
In case Charterers to load steel and/or unpacked manufactured good and/or newsprint and/or
similar sensitive cargo, Charterers' and Owners arrange P and I surveyor to carry out pre-shipment
survey. In this case time to be for Charterers account, cost to be shared between Charterers and
Owners 50/50. Master has right to reject any damaged/unclean cargo on the trucks before
loading that may cause clausing of bill(s) of lading and same to be  replaced by clean cargo.
Intaken cargo considered to  be clean.

EMCO
DENİZCİLİK TİC ve SAN. LTD. ŞTİ.
Gümenic Sok. Perdemsac Plaza
No:17/124 Kozyatağı - ISTANBUL
Tel (0216) 182 91 06 Fax (0216) 372 90.25

# HANBULK



8

**M/V "DOBRUSH"**
**CHARTER PARTY DATED, ISTANBUL 25TH OF JULY 2005**

**Clause 79 - NAABSA**
Deleted.

**Clause 80 - Communication Expenses/Victualling/Entertainment**
Cable and communication Victualling and Entertainment expenses shall be payable by Charterers at the rate of USD 1000,- per month pro rata.

**Clause 81 -Owners' banking details**
| | |
|---|---|
| Beneficiary | : Ardemar Marine Limited, |
| Beneficiary'S Address | : 24a, Archimedous Street, |
| | Engomi, Nicosia 2411, Cyprus |
| Beneficiary's Iban | : Cy23 0030 0178 0000 0178 3311 1625 |
| Beneficiary's Bank | : Laiki Bank Ltd. |
| Beneficiary's Bank's Address | : Nicosia, Cyprus |
| Swift Code | : Likicy2n |

**Clause 82 - U.S. Customs 24 Hour Rule**
Deleted.

**Clause 83 - Fumigation not permitted**
See also Clause 77.

**Clause 84 - Charter Duration**
For Owners guidance if Charterers can do 1 leg duration about 40/50 days without guarantee basis redelivery Port said.
If Charterers can use 2nd leg duration about 65/75 days without guarantee. All duration is an information only.
Hire: USD 9,000 per day pro rata including overtime, payable every 15 days in advance.

**Clause 85 – Bunker Clause**
Charterers to supply bunkers of a quality suitable for burning in the  vessel's engine and auxiliaries and which conforms to the specification of the International Standard:
-IFO according to ISO 8217: 1996 (as per vessel spec)
-MDO according to ISO 8217: 1996 (as per vessel spec)
And the fuel must not contain automotive lubricating oil or other waste chemicals. During the currency of the Charter Party, Charterers shall ensure that bunker delivery notes are presented to the vessel on delivery of bunkers and that during bunkering, four samples of the bunker supplied shall be taken at vessel's bunkering manifold, at equally shared expenses and sealed in the presence of a representative from the Charterers and/or agents and vessel. One sample to be retained on board the vessel, one sent to DNV at Owners' expense, one given to Suppliers and one to Charterers' Agents. Any quality dispute to be settled by fuel experts mutually agreed upon between Charterers and Owners and finding of fuel expert shall be conclusive evidence of conformity or otherwise with bunker fuel specification. Owners shall not be responsible for any under performance in speed or consumption by the use of unsuitable fuel or fuels not complying with the specifications stated above.

**Clause 86 - US Customs Advance notification/AMS Clause for Time Charter Parties**
Deleted.

# HANBULK



ORIGINAL

9

**M/V "DOBRUSH"**
**CHARTER PARTY DATED, ISTANBUL 25TH OF JULY 2005**

**Clause 87 - Russian VAT Clause**
In case the vessel makes a voyage through Russian ports for loading/unloading cargo the Owners shall pay Russian value added tax (VAT) on hire in accordance with Russian Federation Tax Code. VAT to be applied for the period beginning since loading cargo in foreign port till the end of discharging this cargo at port of destination if loading/unloading occurred in Russian port during the voyage.

**Clause 88 - U.S. Security Clause for Time Chartering**
Deleted.

**Clause 89 - Calling Constanza**
In case vessel is calling Constanza under this Charter Party, Owners confirm not to appoint Messrs UBIK or Interservices as surveyors of any kind.

**Clause 90 - Double Banking**
No double banking allowed.

**Clause 91 - Hatch Covers**
The Owners guarantee that on vessel's delivery and throughout the currency of this Charter the vessel's hatch covers are watertight. All hatches are to be carefully attended by the crew to prevent leakage. The Charterers have the option to perform hose/pressure/ ultrasonic or similar test on all hatches at any time during the Charter. If any deficiencies found same to be immediately rectified.

**Clause 92 - Weather Routing**
The Charterers may supply an independent weather routing bureau advise to the Master during voyages and the Master shall comply with the reporting procedure of the weather bureau, however the Master remains responsible for the safe navigation and choice of route.
Evidence of weather conditions shall be taken from vessel's deck logs and independent weather bureaus reports. In the event of a discrepancy between the deck logs and the deck logs shall be final and binding on both parties.

**Clause 93 - General Appearance**
Throughout the duration of this Charter, Owners to maintain the vessel's exterior hull, accommodation block, main deck. hatches and hatch covers in a clean and well painted condition. Furthermore all plimsoll and draft marks are to be clearly marked and readable at all times.

**Clause 94 - Additional Equipment, Fittings**
The Charterers shall be at liberty to fit/weld any additional equipment and fittings for loading, discharging and/or securing cargo always at class'/Master's satisfaction and approval. Such work shall be done at the Charterers expense and time and the Charterers shall remove such equipment and fittings at their expense and time prior to redelivery, if Owners so request. The meaning of this clause shall include but not limited to welding of padeyes for lashing/securing of cargo in holds/on deck.

**Clause 95-Grabs**
Deleted.

**Clause 96 - Bulldozers**
Charterers have the privilege of using bulldozers in vessel's holds. However unit weight of bull dozers will not exceed vessel's tank top strength and same are rubber wheeled.

EMCO
DENIZCILIK TIC. ve SAN. LTD. ŞTI.
Gülbahar Mah. Perdemsac Plaza
No:17/145 Kozyatağı - ISTANBUL
Tel:(0216) 361 38...Fax:(0216) 372 90 25

# HANBULK



**10**

## M/V "DOBRUSH"
### CHARTER PARTY DATED, ISTANBUL 25TH OF JULY 2005

**Clause 97 - Dry Docking**
Deleted.

**Clause 98 - U.S. Trade - Unique Bill of Lading Identifier Clause**
Deleted.

**Clause 99 - War Risk Clause for Time Charters, 1993 (Code name: CONWARTIME 1993)**
1) For the purpose of this Clause, the words:

   a) "Owners" shall include the ShipOwners, bareboat Charterers, disponent Owners, Managers or others operators who are charged with the vessel, and the Master, and

   b) "War Risks" shall include any war (whether actual or threatened), act of war, civil war, hostilities, revolution, rebellion, civil commotion, warlike operations, the laying of mines (whether actual or reported), acts of piracy, acts of terrorists, acts of hostility or malicious damage, blockades (whether imposed against all vessels or imposed selectively against vessels of certain flags or Ownership, or against certain cargoes or crews or otherwise howsoever), by any person, body, terrorist or political group, or the Government of any state whatsoever, which, in the reasonable judgement of the Master and/or the Owners, may be dangerous or are likely to be or to become dangerous to the vessel, her cargo, crew or other persons on board the vessel.

2) The vessel, unless the written consent of the Owners be first obtained, shall not be ordered to or required to continue to or through, any port, place, area or zone (whether of land or sea), or any waterway or canal, where it appears that the vessel, her cargo, crew or other persons on board the vessel, in the reasonable judgement of the Master and/or the Owners, may be, or are likely to be, exposed to War Risks. Should the vessel be within any such place as aforesaid, which only becomes dangerous, or is likely to be or to become dangerous, after her entry into it, she shall be at liberty to leave it.

3) The vessel shall not be required to load contraband cargo, or to pass through any blockade, whether such blockade be imposed on all vessels, or is imposed selectively in anyway whatsoever against vessels of certain flags or Ownership, or against certain cargoes or crews or otherwise howsoever, or to proceed to an area where she shall be subject, or is likely to be subject to a belligerent's right of search and/or confiscation.

4)
   a) The Owners may effect War Risk Insurance in respect of the Hull and Machinery of the vessel and their other interest (including, but not limited to, loss of earning and detention, the crew and their Protection and Indemnity Risks), and the premiums and/or calls therefore shall be for their account.

   b) If the Underwriters of such insurance should require payment of premiums an/or calls because, pursuant to the Charterers' orders, the vessel is within, or is due to enter and remain within, any area or areas which are specified by such Underwriters as being subject to additional premiums because of War Risks, then such premiums and/or calls shall be reimbursed by the Charterers to the Owners at the same time as the next payment of hire is due.

5) If the Owners become liable under the terms of employment to pay to the crew any bonus or additional wages in respect of sailing into an area which is dangerous in the manner defined

# HANBULK

$\boxed{\text{ORIGINAL}}$

11

**M/V "DOBRUSH"**
**CHARTER PARTY DATED, ISTANBUL 25TH OF JULY 2005**

by the said terms, then such bonus or additional wages shall be reimbursed to the Owners by the Charterers at the same time as the next payment of hire is due.

6) The vessel shall have liberty:
   a) To comply with all orders, directions, recommendations or advice as to departure, arrival, routes, sailing in convoy, ports of call, stoppages, destinations, discharge of cargo, delivery, or in any other way whatsoever, which are given by the Government of the Nation under whose flag the vessel sails, or other Government to whose laws the Owners are subject, or any other Government, body or group whatsoever acting with the power to compel compliance with their orders or directions;

   c) To comply with the order, directions or recommendations of any War Risks Underwriters who have the authority to give the same under the terms of the War Risk Insurance;

   d) To comply with the terms of any resolution of the Security Council of the United Nations, any directives of the European Community, the effective orders of any other Supranational body which has the right to issue an give the same, and with national laws aimed at enforcing the same to which the Owners are subject, and to obey the orders and directions of those who are charged with their enforcement;

   e) To divert and discharge at any other port any cargo or part thereof which may render the vessel liable to confiscation as a contraband carrier;

   f) To divert and call at any other port to change the crew or any part thereof or other persons on board the vessel when there is reason to believe that they may be subject to internment, imprisonment or other sanctions.

7) If in accordance with their rights under the foregoing provisions of this clause, the Owners shall refuse to proceed to the loading -or discharging ports, or any one or more of them, they shall immediately inform the Charterers.
   No cargo shall be discharged at any alternative port without first giving the Charterers notice of the Owners' intention to do so and requesting them to nominate a safe port for such discharge. Failing such nomination by the Charterers within 48 hours of the receipt of such notice and request, the Owners may discharge the cargo at any safe port of their own choice.

8) If in compliance with any of the provisions of sub-clauses (2) to (7) of this clause anything is done or not done, such shall not be deemed a deviation, but shall be considered as due fulfilment of this Charter Party.

**Clause 100 - Vessel's Performance Clause**
Vessel must maintain full speed/consumption as per Charter Party warranty during this whole voyage unless otherwise instructed. In the meanwhile, whenever vessel's running speed goes down more than 1 knot during consecutive 24 hours, Captain must immediately advise Charterers of reason thereof in addition to regular noon reports.

**Clause 101 - Subletting Clause**
The Charterers shall have the option of subletting the vessel subject to the owners prior approval which shall not be unreasonably withheld, upon giving notice in writing to the owners, but the original Charterers always remain responsible to the owners for due performance of the charter party and contractors of person of company taking such subletting shall be deemed contractors of



EMCO
DENIZCILIK TIC. ve SAN. LTD. ŞTI.
Gülbahar Sok. Perdemsaç Plaza
No.17/196 Kozyatağı - ISTANBUL
Tel:(0216) 362 90 06 Fax:(0216) 372 90 25

HANBULK



**12**

**M/V "DOBRUSH"**
**CHARTER PARTY DATED, ISTANBUL 25TH OF JULY 2005**

the Charterers for all the purposes of this charter party. Acceptance of delivery by Charterers shall not constitute any waiver of Charterers' rights hereunder.

**Clause 102 - ISPS Clause for Time Charter Parties**

a)

  i) From the date of coming into force of the International Code for the Security of Ships and of Port Facilities and the relevant amendments to Chapter XI of SOLAS (ISPS Code) in relation to the Vessel and thereafter during the currency of this Charter Party, the Owners shall procure that both the Vessel and "The Company" (as defined by the ISPS Code) shall comply with the requirements of the ISPS Code relating to the Vessel and "The Company", Upon request the Owners shall provide a copy of the relevant International Ship Security Certificate ( or the Interim International Ship Security Certificate) to the Charterers. The Owners shall provide the Charterers with the full style contact details of the Company Security Officer (CSO),

  ii) Except as otherwise provided in this Charter Party, loss, damage, expense or delay, excluding consequential loss, caused by failure on the part of the Owners or "The Company" to comply with the requirements of the ISPS Code or this Clause shall be for Owners' account.

b)

  i) The Charterers shall provide the CSO and the Ship Security Officer (SSO)/Master with their full style contact details and, where sub-letting is permitted under the terms of this Charter Party, shall ensure that the contact details of all sub-Charterers are likewise provided to the CSO and the SSO/Master. Furthermore, the Charterers shall ensure that all sub-Charter parties they enter into during the period of this Charter Party contain the following provision;

  ii) "The Charterers shall provide the Owners with their full style contact details and where sub-letting is permitted under the terms of the Charter Party, shall ensure that the contact details of all sub-Charterers are likewise provided to the Owners".

  iii) Except as otherwise provided in this Charter Party, loss, damage, expense or delay, excluding consequential loss, caused by failure on the part of the Charterers to comply with this Clause shall be for the Charterers' account.

c) Notwithstanding anything else contained in this Charter Party all delay, costs or expenses whatsoever arising out of or related to security regulations or regulations or measures required by the port facility or any relevant authority in accordance with the ISPS Code including, but not limited to, security guards, launch services, tug escorts, port security fees or taxes and inspections, shall be for the Charterers' account, unless such costs or expenses result solely from the Owners' negligence.

d) All measures required by the Owners to comply with the Ship Security Plan shall be for the Owners' account.

e) If either party makes any payment which is for the other party's account according to this Clause, the other party shall indemnify the paying party.

EMCO
DENİZCİLİK Tıc. ve SAN. LTD. ŞTİ.
Gülbahar Sok. Peramacı Plaza
No:17/146 Kozyatağı - İSTANBUL
Tel:(0216) 372 81 05 Fax:(0216) 372 90 25

# HANBULK



* Delete para (a) or (b) as appropriate                                                          520
* * Where no figure is supplied in the blank space this provision only shall be void but the other provisions 521
of this clause shall have full force and remain in effect.                                          522
If mutually agreed, clauses ......46....... to ...102........... both inclusive, as attached hereto are fully   523
incorporated in this Charter Party.                                                               524

EMCO
DENIZCILIK NAK. ve SAN. LTD. ŞTI.
Gülbahar/Çok. Perdemsac Plaza
No:17/19 Kozyatağı - ISTANBUL
Tel:(0216) 362 71 65 Fax (0218) 372 90 25

# Exhibit B

**FIRST PERIOD**

| | | | DUE TO CHARTERERS | DUE TO OWNER |
|---|---|---|---|---|
| DEL | 08.01.07 3:40 | | | |
| REDEL | 08.02.07 20:20 | | | |
| TOTAL DAYS | 31,6944 | | | |
| | | HIRE | | |
| DAYS / TOTAL HIRE | 31,6944 | 15 000,00 | | 475 416,67 |
| COMMISSION | 3,75% | | 17 828,12 | |
| 1st hire | | | 435 997,41 | |
| 2nd hire | | | 71 766,83 | |
| 3rd hire | | | 19 059,36 | |
| C/V/E | 1000 | | | 1 042,01 |
| ILOHC | | | | 2 000,00 |

| | QTTY | PRICE USD | | |
|---|---|---|---|---|
| BUNKER ON DELIVERY | | | | |
| IFO | 346,06 | 290,00 | | 100 355,95 |
| MDO | 173,41 | 580,00 | | 100 578,96 |
| BUNKER ON REDELIVERY | | | | |
| IFO | 174,70 | 290 | 50 663,00 | |
| MDO | 86,00 | 580 | 49 880,00 | |

| | | | | |
|---|---|---|---|---|
| UNDER PERFORMANCE CLAIM 3 HRS 54 MINS | | HIRE | 2 437,50 | |
| OFF HIRE | | COMM | | 91,41 |
| DAYS | 0,1625 | C/V/E | 5,34 | |
| MGO OVER CONSUMPTION NEMRUT - ADEN | | | 2 320,00 | |

| | | | |
|---|---|---|---|
| 'ARIOUS | | | |
| BALLAST BONUS | | | 18 000,00 |
| NEMRUT OWNERS | | 1 534,00 | |
| SUEZ CREW CHANGE | | 1 616,97 | |
| ADEN CREW CHANGE | | 1 014,90 | |
| FW ADEN | | 1 250,00 | |
| ADEN SHIFTING | | | |
| BUNKER COST | | 1 000,00 | |

| | | | |
|---|---|---|---|
| **TOTAL** | | 656 373,44 | 697 484,99 |
| | | 0,00 | **41 111,55** |

## ATTORNEY VERIFICATION

State of New York    )
                     ) ss.:
County of New York   )

GINA M. VENEZIA, being duly sworn, deposes and says as follows:

1.     I am a partner with the law firm of Freehill Hogan & Mahar, LLP, attorneys for Plaintiff in this action, I have read the foregoing Verified Complaint and know the contents thereof, and the same is true to the best of my knowledge, information and belief.

2.     The sources of my information and the grounds for my belief are communications, information and documentation provided by our client and/or by solicitors representing our client.

3.     The reason this verification is made by an attorney and not by the Plaintiff is because the Plaintiff is a foreign entity, none of whose officers are presently within this Judicial District.

_____
Gina M. Venezia

Sworn to before me this
19th day of February 2008

_____
Notary Public

MELISSA COLFORD
Commissioner of Deeds
City of New York-No. 5-1692
Certificate Filed in New York
Commission Expires 4/1/08